IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WARD SMITH II,<br><br>    Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>    Defendant. | Case No. 21-CV-2260-JAR-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Ward Smith II, proceeding pro se, filed suit against Defendant Amazon.com Services LLC on June 9, 2021. Plaintiff filed an Amended Complaint in October asserting an employment discrimination claim and nine other claims.[1] The parties negotiated a settlement agreement which is now at issue. Before the Court are three motions by Plaintiff seeking to set aside the settlement agreement (Docs. 26, 27, and 31), and Defendant's Motion to Enforce the Settlement Agreement (Doc. 28). These motions are fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court denies Plaintiff's motions and grants Defendant's motion.

**I.    Factual and Procedural Background**

Plaintiff worked for Defendant in 2020 and claims that he was sexually harassed due to his gender and retaliated against for speaking up about it. He filed an Amended Complaint on October 1, 2021 asserting employment discrimination claims and referencing several other

---

[1] Plaintiff's other "claims" were simple statements such as "stand your ground law" and "castle doctrine." The bulk of his Amended Complaint related to employment discrimination and/or retaliation.

statutes.[2]  The Court's Scheduling Order required the parties to exchange good faith settlement proposals in October.  On October 7, 2021, Plaintiff sent his settlement proposal to Defendant's counsel by email.  On October 8, 2021, Defendant's counsel responded with a settlement counterproposal.  After exchanging several emails throughout the day, Defendant sent a settlement offer and a written settlement agreement to Plaintiff at 4:40 p.m.  On October 11, 2021, Plaintiff retuned via email the signed settlement agreement, a signed W-4 and W-9, and electronic fund transfer instructions.

On the morning of October 12, Defendant's counsel spoke with Plaintiff over the phone to verify his banking information.  Later that day, Plaintiff inquired by email as to the timing of the settlement payment.  The next day, Plaintiff filed a Motion for Judgment on the Pleadings with the Court.[3]  In this motion, Plaintiff stated that he and Defendant had entered into a settlement agreement, but Defendant had not yet returned a signed copy to him so he did not believe it was binding.  He also requested judgment on the pleadings, stating that he was entitled to relief based on his Amended Complaint.

On October 14, Defendant's counsel emailed Plaintiff a counter-signed settlement agreement, and Defendant deposited the agreed-upon settlement payment by direct deposit to Plaintiff's bank checking account.  The settlement agreement provides, in part, that "[u]pon receipt of the settlement payment, [Plaintiff] agrees to dismiss the Lawsuit with prejudice, each party to bear his or its own costs and attorneys' fees."[4]

---

[2] Plaintiff did not file a claim under the Age Discrimination in Employment Act ("ADEA") or assert any factual allegations regarding an age discrimination claim.  His employment discrimination claims were based on his gender.

[3] Doc. 22.

[4] Doc. 29-4 at 12 ¶ 2.  This paragraph also provides that the agreement shall not be filed with the Court, yet Plaintiff attached an unsigned copy to his motion to strike, and Defendant attached the signed copy to its motion to enforce.

On October 20, Defendant's counsel emailed Plaintiff stating that its records indicated that both settlement payments had gone through. Defendant's counsel also requested Plaintiff to sign an attached joint stipulation to dismiss the lawsuit with prejudice. Plaintiff responded with a revised draft stipulation that stated that he was only willing to join in the stipulation of dismissal if it would be "void and/or be rescinded" if the Court granted his pending motion for judgment on the pleadings.[5]

Defendant filed its opposition to Plaintiff's motion on October 28. On November 18, this Court denied Plaintiff's motion finding that Plaintiff was not entitled to judgment on the pleadings as a matter of law. After this ruling, on November 22, Defendant's counsel emailed Plaintiff asking if he would sign the stipulation of dismissal. On November 30, Defendant's counsel emailed Plaintiff again following up on the November 22 email. Plaintiff responded by stating that he would not agree to the joint stipulation of dismissal because he felt bound by an unfair settlement agreement and wanted to renegotiate the settlement agreement.

On December 8, the Court requested a status update on the joint stipulation to dismiss the lawsuit. Defendant's counsel responded that Plaintiff had not joined in the stipulation of dismissal and if he did not agree to do so, Defendant would be filing a motion to enforce the settlement.

On December 9, Plaintiff filed a Motion to Strike the Settlement (Doc. 26). In this motion, he asserts numerous reasons why the settlement agreement should be stricken and also requests that the Court initiate or require negotiations for a new settlement agreement. Later that day, Plaintiff filed a Motion for Rescission of the Settlement Agreement (Doc. 27) asserting identical arguments, except Plaintiff included language stating that "[i]f necessary to make

---

[5] Doc. 29-5 at 4.

binding this motion for rescission . . . Plaintiff is willing to enter into a promissory note agreement with Defendant for repayment to satisfy the court for imposing rescission . . . for the purpose of Plaintiff and Defendant [to remain] at 'the status quo ante' [and] can continue negotiating a new settlement agreement."[6]  Plaintiff also sent an email to Judge James' chambers stating his offer to enter into a promissory note agreement.

On December 17, Defendant filed a Motion to Enforce Settlement Agreement (Doc. 28) and filed a response to Plaintiff's two pending motions.  Defendant asserts that Plaintiff's arguments have no validity, and the parties entered into a valid settlement agreement that the Court should enforce.  On this same day, Plaintiff filed a third motion, one to set aside Defendant's settlement agreement (Doc. 31).  Plaintiff's motion was identical to his other two motions.[7]  Plaintiff did not respond to Defendant's motion.

The Court will now address these four related motions and whether the parties entered into an enforceable settlement agreement.

## II.     Legal Standard

Settlements are favored by the Tenth Circuit,[8] and "[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is

---

[6] Doc. 27 at 3, ¶ 12.

[7] Except for the titles of the motions and Plaintiff's motion for rescission containing language regarding his willingness to enter into a promissory note, all three motions are identical.

[8] *See Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993), *aff'd*, 511 U.S. 863 (1994).

pending before it."[9]  In resolving issues of contract formation and construction of a purported settlement agreement, the Court applies state law.[10]  Kansas law applies here.[11]

Under Kansas law, a settlement agreement is a type of contract and is therefore governed by contract principles.[12]  A valid contract requires offer, acceptance, and consideration.[13] "Additionally, in order for parties to form a binding contract, the offer and acceptance must manifest a mutual assent or a 'meeting of the minds' on all the essential terms of the contract."[14] "This 'meeting of the minds' requirement is proved when the evidence shows 'with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract.'"[15]

Generally, if the language in a written contract "is clear and can be carried out as written, there is no room for rules of construction.  To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[16]  "In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and

---

[9] *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citing *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993)).

[10] *Id.*

[11] Plaintiff filed suit in Kansas, and the settlement agreement between the parties provides that Kansas law applies.  Doc. 29-4 at 16 ¶ 16.

[12] *Jones v. Wyandot, Inc.*, No. 14-2112-TJJ, 2015 WL 5730604, at *3 (D. Kan. Sept. 30, 2015) (citing *Ferguson v. Smith*, 63 P.3d 1119, 1121 (Kan. Ct. App. 2003)).

[13] *Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1124 (D. Kan. 2015) (citation omitted).

[14] *Id.* (citation omitted); *see also Unified Sch. Dist. No. 446 v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012) ("An unconditional and positive acceptance is required to form a contract.").

[15] *Howard*, 92 F. Supp. 3d at 1124 (citation omitted).

[16] *Gore v. Beren*, 867 P.2d 330, 337 (Kan. 1994) (quoting *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, Syl. ¶ 2 (Kan. 1992)).

common meaning, and a contract of this character is to be enforced according to its terms."[17] "The cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow."[18]

Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.[19] Here, neither party requests an evidentiary hearing, and a hearing is not necessary because there is no dispute of material fact bearing on the existence of the settlement or its terms.[20] Instead, all material facts pertaining to the settlement are found in email discussions between Plaintiff and Defendant, which the parties have provided to the Court.

Because Plaintiffs proceed *pro se*, some additional considerations frame the Court's analysis. The Court must construe Plaintiffs' pleadings liberally and apply a less stringent standard than that which applies to attorneys.[21] "Nevertheless, [Plaintiffs] bear[] 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"[22] The Court may not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal

---

[17] *Wagnon v. Slawson Expl. Co.*, 874 P.2d 659, 666 (Kan. 1994) (quoting *Barnett v. Oliver*, 858 P.2d 1228, 1238 (Kan. Ct. App. 1993)).

[18] *Kay-Cee Enter., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 843 (D. Kan. 1999) (quoting *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 926 P.2d 669, 674 (Kan. Ct. App. 1996)).

[19] *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).

[20] *See TSYS Merch. Sols., LLC v. Pipeline Prods., Inc.*, No. 16-4024-SAC, 2016 WL 4702419, at *5 (D. Kan. Sept. 8. 2016) ("No evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present.") (quoting *Sump v. Pamida, Inc.*, No. 16-4024-SAC, 1998 WL 1054949, at *1 (D. Kan. Nov. 25, 1998)); *Jaax v. Sheriff Dep't of Johnson Cnty. Kan.*, No. 11-2522-CM, 2012 WL 3939871, at *4 (D. Kan. Sept. 10, 2012) (finding an evidentiary hearing unwarranted when there was no substantial factual dispute regarding the terms of the agreement because the parties had entered into fully integrated written agreements).

[21] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (citation omitted).

[22] *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

theory on a plaintiff's behalf."[23]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[24]

### III. Discussion

As noted above, a binding contract under Kansas law requires an offer, acceptance, and consideration.  There is no dispute here that Defendant offered a settlement in the form of a written settlement agreement, Plaintiff accepted that offer by signing and returning the settlement agreement to Defendant, and Plaintiff received the consideration set forth in the agreement.[25]  In addition, the Court has the fully executed settlement agreement before it.  Thus, a binding contract was made.

Generally, a party who voluntarily and knowingly authorizes the settlement of his claims cannot avoid the terms of the settlement simply because he changes his mind.[26]  Instead, in Kansas, there must be evidence of bad faith or fraud.[27]  Here, Plaintiff asserts a multitude of reasons for why the Court should not enforce the settlement agreement.  Notably, however, he does not contend that there was bad faith or fraud.  Broadly, he contends that the settlement agreement is not enforceable due to misrepresentation, mistake, duress, or undue influence. Some of Plaintiff's specific reasons include: (1) that he lacked the capacity and was unduly influenced because of attention deficit hyperactivity disorder ("ADHD"), intoxication, and/or not being represented by an attorney; (2) that the settlement agreement is illegal, unconscionable, and unconstitutional because it is one-sided and does not contain a method for Plaintiff to cancel

---

[23] *Whitney*, 113 F.3d at 1174 (citing *Hall*, 935 F.2d at 1110).

[24] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[25] Plaintiff cashed the settlement check issued to him.

[26] *See Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001).

[27] *Id.*

the settlement; (3) that he made a mistake in executing the agreement and is not satisfied with the settlement because it differs from the initial negotiation; (4) that he made the agreement under duress due to the economic hardships caused to him by COVID-19; and (5) that Defendant made a misrepresentation when it did not disclose any tax liability.[28] The Court will briefly address Plaintiff's contentions.

Plaintiff asserts that he has ADHD and that he was drunk when communicating with Defendant's attorney, which caused him to make an unconscious decision to execute the agreement. Plaintiff does not deny that he signed the settlement agreement or that he deposited the check. He does not dispute any provisions in the settlement agreement or that the parties engaged in negotiations over several days. Plaintiff does not deny that he had the written settlement agreement for three days before signing it and returning it to Defendant, along with a signed W-4 and W-9, and electronic fund transfer instructions. Furthermore, after Plaintiff executed the agreement, his actions show that he understood what he was doing. On October 12, Plaintiff spoke with Defendant's counsel to confirm his banking information, and he inquired as to the timing of the payment. There is no evidence that his alleged ADHD or intoxication impacted or influenced any of these events. Furthermore, ADHD is not a sufficient reason for repudiating a settlement agreement.[29] And although under Kansas law intoxication may render a contract voidable—not void,[30] "if a person who enters into a contract while he is intoxicated fails

---

[28] Plaintiff also asserts that the settlement agreement provides a waiver and revocation clause with regard to age discrimination claims and that he has an opportunity to revoke the agreement as to those claims for seven days following execution of the agreement. There are no age discrimination claims, however, in this case. Furthermore, more than seven days passed before Plaintiff attempted to revoke the agreement.

[29] *See Jaax v. Chrysler Fin. Servs. Am. LLC*, No. 08-2490-KHV, 2009 WL 4907053, at *1 (D. Kan. Sept. 29, 2009).

[30] *State ex rel. Sec'y, Dep't for Child. & Fam. v. Cares*, No. 121,976, 2021 WL 2386031, at *3 (Kan. Ct. App. June 11, 2021).

to disaffirm the agreement within a reasonable time after he becomes sober and has full knowledge of what he has done, he thereby ratifies the contract and is bound thereby."[31] Plaintiff made several filings with the Court after executing the settlement agreement, but he never asserted that his incapacity due to ADHD or intoxication affected the settlement agreement. Instead, on October 13, he affirmatively stated that he had entered into a settlement agreement, but that Defendant had not yet signed it. Only on December 9, 2021, did Plaintiff first assert that the settlement agreement should be rescinded due to intoxication or ADHD. Thus, the Court finds that these reasons are insufficient to avoid the settlement agreement.

Plaintiff also asserts that he lacked capacity to enter into the settlement agreement because he was not represented by an attorney. Relatedly, Plaintiff contends that the agreement is illegal, unconscionable, and unconstitutional because it is one-sided and does not contain a method for Plaintiff to cancel the settlement. And he contends that he made a mistake in executing the agreement because he is not satisfied with the settlement because it differs from his initial offer. Again, as noted above, the emails conclusively demonstrate the communications between Plaintiff and Defendant, and Plaintiff's acceptance of the settlement agreement.

Under Kansas law, "substantive unfairness or some form of deception in the contracting process [is required] to render a contract unconscionable."[32] "[T]he principle of unconscionability is aimed at preventing oppression and unfair surprise, not disturbing the allocation of risks resulting from an imbalance of bargaining power."[33] Here, the settlement terms are clear, and there is no evidence of unfair surprise or oppression. Although Plaintiff

---

[31] *Curry v. Stewart*, 368 P.2d 297, 301 (1962) (quotation marks and citation omitted).

[32] *Frost v. ADT, LLC*, 947 F.3d 1261, 1268 (10th Cir. 2020) (citing *Wille v. S. Bell Tel. Co.*, 549 P.2d 903, 906–07 (1976)).

[33] *Id.* (citing *Wille*, 549 P.3d at 906–07).

asserts that the agreement is unfair, illegal, and/or unconstitutional because it does not allow him to cancel it, Plaintiff did not have to enter into the agreement in the first place. He simply could have chosen not to sign it. Furthermore, the agreement specifically set out that Plaintiff could consider the agreement before signing it.

With regard to Plaintiff's assertion of mistake, "[a] party's unilateral mistake coupled with the other party's fraud and knowledge of the mistake is grounds for rescission."[34] Case law is clear that there must be mistake by one party *and* fraud or inequitable conduct by the other party.[35] Here, there is no evidence of fraud or inequitable conduct on behalf of Defendant. Plaintiff simply states that the agreement differs from his initial offer. Again, Plaintiff had the ability to review the agreement prior to signing it and making the decision as to whether the settlement amount was sufficient. He simply could have rejected Defendant's offer. The fact that Plaintiff has now decided that he is not satisfied with the agreement—after signing the agreement and cashing the agreed-upon amount of the settlement—does not demonstrate a lack of capacity, unconscionability, or mistake that allows for rescission of the agreement.[36]

To the extent that Plaintiff asserts he made a mistake because Defendant misrepresented to Plaintiff the dollar amount because it did not disclose any tax liability, the written settlement agreement expressly contradicts Plaintiff. There is no indication in the email correspondence that the parties discussed tax liability. However, the written settlement agreement provides that Defendant

> makes no representations or warranties with regard to the tax
> consequences of the payments described above. [Plaintiff] agrees

---

[34] *Kipp v. Myers*, 753 F. Supp. 2d 1102, 1112–13 (D. Kan. 2010) (citations omitted).

[35] *Id.*

[36] *See Woods v. Denver Dep't of Revenue*, 45 F.3d 377, 378 (10th Cir. 1995) (stating that generally a party who "knowingly and voluntarily authorizes the settlement of [his] claims cannot avoid the terms of the settlement simply because []he changes [his] mind.").

> and understands that if a government taxing authority determines that any local, state, and/or federal taxes on those payments and/or any penalties or assessments thereon are due, he is responsible for payment.[37]

In addition, the settlement agreement clearly provides that the settlement amount will be paid in two checks with one half representing non-wage damages and the other half of payment would be "less appropriate payroll withholdings, for which [Plaintiff] will receive an IRS Form W-2."[38] Thus, the Court cannot find mistake or misrepresentation.

Finally, Plaintiff asserts that he was under duress when he agreed to the settlement because of "the overwhelming economic impacts caused to [him] by COVID-19 of which has in fact also caused to any other reasonable person economic hardship."[39] COVID-19 has affected numerous individuals, but COVID-19, or economic hardship caused by COVID-19, does not provide a valid basis for rescinding a settlement agreement that was knowingly entered into by the parties.

In sum, Plaintiff does not provide any valid reason for the Court to rescind, strike, or set aside the settlement agreement between him and Defendant. In contrast, Defendant demonstrates that the settlement agreement should be enforced. Thus, the Court denies Plaintiff's motions and grants Defendant's motion. Because the settlement agreement shall be enforced, this action is dismissed with prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Strike Defendant's Settlement Agreement and General Release (Doc. 26) is **denied**, Plaintiff's Motion

---

[37] Doc. 29-4 at 12 ¶ 3.

[38] *Id*. at 11 ¶ 1(a)–(b).

[39] Doc. 26 at 1 ¶ 2.

for Rescission to Defendant's Settlement Agreement and Release (Doc. 27) is **denied**, and Plaintiff's Motion to Set Aside the Settlement Agreement (Doc. 31) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Enforce Settlement Agreement (Doc. 28) is **granted**.  This action is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: January 20, 2022

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE